NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER VALDIVIESO | Hon. Claire C. Cecchi, U.S.D.J. |
| Plaintiff, | Civil Action No.: 10-1001 (CCC) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY | **OPINION** |
| Defendant. | |

**CECCHI, District Judge**

Plaintiff Alexander Valdivieso brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income Benefits. Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard before this Court. For the following reasons, the Commissioner's decision is affirmed in part and remanded in part for further proceedings in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 24, 2006, Plaintiff filed for Supplemental Security Income Benefits under the Social Security Act, alleging that he was disabled as of May 15, 2006. (Administrative Transcript, hereinafter "Tr.," 89–95.)  In his application, Plaintiff alleged that he was disabled due to a fractured skull, a broken left ankle, a hernia, and memory problems. (*Id.* 102.)  His application was denied initially and on reconsideration. (*Id.* 288–89.)  Thereafter, he requested reconsideration and a hearing before an Administrative Law Judge ("ALJ").  After a hearing held

1

on June 26, 2009, ALJ Dennis O'Leary issued a decision, dated July 17, 2009, finding that Plaintiff was not disabled and denying Plaintiff's claim for benefits. (*Id.* 10–20.) On January 22, 2010, the Appeals Counsel denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* 1–4.) Plaintiff then commenced this action seeking review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff was 36 years old at the time of the 2009 hearing and testified that he had a ninth or tenth grade education (Tr. 25). He did not obtain a GED or receive any vocational training (*Id.*). Prior to his alleged disability, Plaintiff had done carpentry and construction, had worked as a trucker's helper, and had been a high-low operator in a warehouse. (*Id.* 103). He spent ten years in prison for aggravated assault. (*Id.* 34, 242).

On May 15, 2006, a group of men assaulted Plaintiff outside his home. He suffered a fractured skull and left ankle and was comatose for a period of time as a result. (*Id.* 102, 179, 243, 311–12). Initial and follow-up CT scans and an MRI of Plaintiff's skull showed no intracranial abnormality, no acute intracranial pathology, no diffuse axonal injury, no acute or obvious brain contusion, and no acute infarct. (*Id.* 316, 319, 334).

Plaintiff testified to the effects of the assault at the hearing. He stated that since the assault he could not remember information from more than one to two months prior. (*Id.* 26). He ached when it rained. (*Id.* 27). He felt pins and needles in his left foot and pain in his leg if he walked more than two blocks. (*Id.* 33). He got headaches and pain in his left eye when he watched TV for too long. (*Id.* 34). He also stated that he still had a skull fracture. (*Id.* 27). He got distracted easily and could not remember instructions after a few minutes. (*Id.* 30–31). Plaintiff stated he attempted to return to work four times but was not successful. (*Id.* 28–30). He

was fired as a roofer for repeatedly dropping heavy roofing materials from ladders and rooftops. (*Id.* 26).

On November 30, 2006, Plaintiff went to the Jersey City Medical Center emergency room complaining of knee pain, but was able to walk at a steady gait.  (*Id.* 229–30).  He was diagnosed with a knee sprain.  (*Id.* 235).

Dr. M. Rubani performed an orthopedic consultative examination on December 19, 2006 and found Plaintiff had diminished dorsal and plantar flexion in his left ankle and difficulty squatting due to heel pain but walked at a normal tandem gait (although not toe-to-toe) and was able to sit, stand, and lie down without assistance.  (*Id.* 237–38).  An x-ray taken that same day showed Plaintiff's leg fracture had healed.  (*Id.* 241).  An x-ray taken on January 20, 2007 showed "no acute fracture."  (*Id.* 267).

Dr. Harry Silver conducted a physical residual functional capacity ("RFC") assessment ("the Silver assessment") on January 24, 2007 and found that, in part because of Plaintiff's fractured ankle, Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds, could stand or walk at least two hours in an eight-hour workday, could sit about six hours, and had unlimited ability to push or pull.  (*Id.* 246, 250).  Plaintiff was not permitted to use a ladder/rope/scaffolds or crouch, and could only occasionally use stairs, balance, stoop, kneel, and crawl.  (*Id.* 247).  Plaintiff had to avoid concentrated exposure to vibration and hazards such as machinery and heights.  (*Id.* 249).  The Silver assessment found that the severity of Plaintiff's subjective physical symptoms were consistent with medical and non-medical evidence.  (*Id.* 250).

Dr. Anthony J. Candela performed a psychiatric consultative examination of Plaintiff on January 19, 2007.  Plaintiff told Dr. Candela that he suffered memory loss as a result of the

assault.  (*Id.* 243).  In addition, Plaintiff stated that both heat from the stove and cold weather caused him to faint, he could not do heavy lifting or pushing, his ankle caused him pain, and he had chronic headaches.  (*Id.*).  Dr. Candela completed a functional assessment, finding that Plaintiff was depressed and anxious and afraid he would be assaulted again if he left his home.  (*Id.*).  In his mental status evaluation, Dr. Candela found Plaintiff had cognitive and emotional after effects from his head injury, including flashbacks, sweats, nightmares, depression, and phobia.  (*Id.*).  Plaintiff had limited intellectual, memory and concentration abilities but "was alert, attentive and oriented."  (*Id.* 243–44).  Dr. Candela did not perform tests for memory or concentration, as noted by Dr. Benito Tan in his initial psychiatric review technique, conducted on January 30, 2007.  (*Id.* 265).  Dr. Candela concluded that Plaintiff had posttraumatic stress disorder secondary to mugging, depression, selective memory impairment secondary to traumatic head injury, chronic medical problems and cognitive limitations, and was unable to manage money on his own.  (*Id.* 244).  He assigned Plaintiff a Global Assessment Functioning (GAF) score of 35–40.[1]  (*Id.*).

During Dr. Tan's review, Plaintiff complained of long-term memory loss.  Dr. Tan noted that Plaintiff had not been placed on any medication for psychiatric issues and had not received a referral for psychiatric treatment.  He concluded there was insufficient evidence to determine Plaintiff's psychiatric status.  (*Id.* 266).

Dr. Leslie Williams conducted a mental RFC assessment on November 23, 2007 ("the Williams assessment") and concluded that Plaintiff was "capable of understanding instructions and sustaining pace and persistence in simple, routine work."  (*Id.* 285).  Plaintiff had subjective

---

[1]  The GAF scale indicates the clinician's overall judgment of a person's level of psychological, social, and occupational functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32, 34 (4th ed. 2000)  A GAF score of 35-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family, relations, judgment, thinking, or mood."  *Id.*

complaints of cognitive limitations, but Dr. Williams questioned Plaintiff's credibility based on his history of alcohol abuse, which he had previously denied, and his prior criminal behavior. (*Id.*).

Vocational expert Rocco Meola testified at the hearing as to work in the national economy Plaintiff could perform. The ALJ asked Meola the following hypothetical: whether work existed for a person of Plaintiff's age, education, and work history who could not remember information for more than one to two months but could remember instructions for simple, repetitive tasks from day to day. (*Id.* 40). Meola responded that jobs existed for such a person at all exertional levels. (*Id.* 41). Plaintiff's attorney asked Meola if such a person with a Global Assessment of Functioning of 35–40 would be able to work, and Meola answered that such a person would require restructuring in a vocational rehabilitation program. (*Id.* 42).

## II. LEGAL STANDARD

### A. Determining Disability

Pursuant to the Social Security Act, to receive Supplemental Security Income Benefits, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. § 1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy ...." *Id.*  Impairments that affect the claimant's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered *exertional* limitations. 20 C.F.R. § 416.969a(a)-(b); *Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000).  All other impairments are considered *nonexertional.* 20 C.F.R. § 416.969a(a), (c); *Sykes*, 228 F.3d at 263.  Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell,* 461 U.S. 458, 467, 103 S.Ct. 1952, 76, L.Ed.2d 66 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration follows a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  The evaluation will continue through each step unless it can be determined, at any point, that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4).   The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263.  Neither party bears the burden at step three.  *Id.* at 263, n.2.

At step one, the claimant's work activity is assessed, and the claimant must demonstrate that he is not engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).   An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit.  *Id.* § 416.972.  If the claimant is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of claimant's medical

condition, age, education, or work experience. *Id.* § 416.920(b). If the individual is not engaged in substantial gainful activity, the analysis proceeds to the second step.

At step two, the claimant must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe." *Id.* § 416.920(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. *Id.* § 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. *See Leonardo v. Comm'r of Soc. Sec.*, Civ. No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 4, 2010). If the claimant does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the claimant's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* § 416.920(a)(4)(iii). If the impairments are the same or equivalent to those listed, the claimant is *per se* disabled. *Id.* § 416.920(d); *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 119 (3d Cir. 2000). At this point, the ALJ must set forth the reasons for his findings. *Burnett,* 220 F.3d at 119. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. *Id.* Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review." *Id.*

When the claimant does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether the claimant's residual functional capacity enables him to perform his past relevant work. 20 C.F.R. § 416.920

(a)(4)(iv).  This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) The ALJ must compare the residual functional capacity to the past relevant work to determine whether the claimant has the capability to perform the past relevant work.  *Burnett*, 220 F.3d at 120.  The Social Security Administration often classifies residual functional capacity and past work by physical exertion requirements from "sedentary" to "very heavy work."  *See id.*; 20 C.F.R. § 416.967.  If the claimant can perform his past work, the ALJ will find that he is not disabled.  20 C.F.R. § 416.920(f).  If the claimant lacks the residual functional capacity to perform any work he has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Commissioner must show that, based on the claimant's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy that the claimant can perform.  *Id.* § 416.920(a)(4)(v).  During this final step, the burden lies with the government to show that the claimant is not disabled by demonstrating that there is other substantial, gainful work that the claimant could perform, given his age, education, work experience and residual functional capacity.  *See Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Sykes*, 228 F.3d at 263.  If the Commissioner cannot show there are other jobs for the claimant in the national economy, then the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).

**B. Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings. *Williams v. Sullivan,* 970

F.2d 1178, 1182 (3d Cir.1992); *see also* 42 U.S.C. § 405(g).   Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *See Gober v. Matthews,* 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).   If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue,* No. 4:08-CV-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing *Hargenrader v. Califano,* 575 F.2d 434, 437 (3d Cir. 1978)). Given the totality of the evidence, including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported. *See Curtin v. Harris,* 508 F.Supp. 791, 792–93 (D.N.J. 1981).  Generally, medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. § 416.927.  Overall, the substantial

evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

## III. DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  (Tr. 15.).

At step two, the ALJ concluded that plaintiff had a severe impairment — selective memory impairment secondary to a skull fracture.  (*Id.*)  However, the ALJ found that the residual effects of the skull fracture and leg fracture were not severe impairments.  (*Id.*)

At step three, the ALJ found that Plaintiff's memory impairment did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* 16).  The ALJ rejected any match because the record did not establish that Plaintiff's impairment had resulted in at least two of the paragraph B criteria, as required by 20 C.F.R. §§ 416.925 and 416.926, or any of the paragraph C criteria  (*Id.*).  Specifically, the ALJ determined that Plaintiff had only mild restriction in activities of daily living, only moderate difficulties with regard to concentration, persistence, or pace, and no medically identifiable episodes of decompensation for an extended duration.  (*Id.*).

At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform work at all exertional levels, but that he had non-exertional limitations restricting him to simple, repetitive tasks.  (*Id.* 17.)  He gave controlling weight to the evaluations of Drs. Tan and Williams because they were supported by the medical evidence, and only gave some weight to Dr. Candela's report because he had not performed memory loss testing.  (*Id.* 17–19).  The ALJ

did not credit Plaintiff's statements regarding the intensity, persistence, and limiting effects of his memory loss symptoms because they were inconsistent with the other evidence in the record and Plaintiff was not entirely credible.  The ALJ pointed to Plaintiff's "poor work record" prior to the assault, his ten-year incarceration for aggravated assault, his ability to recall information from more than two months prior, and Dr. Williams' concerns with his credibility.  (*Id.* 17–18). Still, the ALJ found that Plaintiff was not able to perform his past relevant work because of his non-exertional limitations.  (*Id.* 19.)  Accordingly, the ALJ proceeded to the fifth and final step of the sequential evaluation process.

At step five, the ALJ relied on Medical-Vocational Rule 204.00, as well as the testimony of the vocational expert, to find that there were a significant number of jobs in the national economy that plaintiff could perform.  (*Id.* 19-20.)  Accordingly, the ALJ found that Plaintiff was not disabled.

## B. Remand Is Required Before the Court can Determine Whether the RFC Assessment Is Supported by Substantial Evidence

Plaintiff raises a number of arguments concerning the ALJ's analysis in step four.  Each of Plaintiff's contentions will be addressed in turn.

### 1. The ALJ Properly Assessed the Credibility of Plaintiff's Symptoms

First, Plaintiff argues that the ALJ improperly assessed the credibility of his testimony as to the intensity, persistence, and limiting effects of his memory loss symptoms and did not give the testimony sufficient weight in making the RFC assessment.

Pursuant to 20 C.F.R. § 416.929, the ALJ must follow a two-part process when considering a claimant's symptoms.  First, the ALJ must find that a medically determinable impairment exists that could reasonably be expected to cause claimant's symptoms.  If the ALJ

finds that such an impairment is present, he must next evaluate the intensity, persistence, and limiting effects of the symptoms and determine to what extent the symptoms limit the claimant's ability to work.  20 C.F.R. § 416.929(b)-(c); SSR 96-7.  In this second part the ALJ will consider the objective medical evidence as well as other evidence, and will give serious consideration to the claimant's statements about his symptoms.  *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986); 20 C.F.R. § 416.929(c)(4).  Since "allegations of pain and other subjective symptoms must be supported by medical evidence," *Hartranft*, 181 F.3d at 372, the ALJ should weigh a claimant's symptoms against the objective evidence.

When a claimant's description of his symptoms is inconsistent with the objective medical evidence, the ALJ must make a finding as to the credibility of the claimant's statements by considering all the evidence in the record.  20 C.F.R. § 416.929(c)(4); SSR 96-7.  To make that finding the ALJ must consider the following seven factors, to the extent they are relevant:  (1) claimant's daily activities; (2) the location, frequency, and duration of claimant's symptoms; (3) factors that precipitate and aggravate symptoms; (4) type, dosage, effectiveness, and side effects of medication taken to relieve symptoms; (5) treatment claimant has received to relieve his symptoms; (6) measures claimant uses or has used to relieve his symptoms; and (7) other factors concerning claimant's functional limitations and restrictions due to his symptoms.  20 C.F.R. § 416.929(c)(3); SSR 96-7.  As with other relevant evidence, when the ALJ discounts or rejects a claimant's statements, he must adequately explain his reasons for doing so.  *See*, *e.g.*, *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988).  Nonetheless, "[t]he ALJ has discretion to evaluate the credibility of a claimant and . . . arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent" of the severity of the claimant's

symptoms.  *Cerrato v. Comm'r of Soc. Sec.*, 386 F. App'x 283, 286 (3d Cir. 2010) (internal quotation marks and citations omitted).

ALJ O'Leary complied with all the above requirements and standards.  First, he found that Plaintiff had a medically determinable impairment that could reasonably be expected to cause his symptoms.  (Tr. 18).  Second, the ALJ considered the medical evidence as well as Plaintiff's testimony.  He found Plaintiff's allegations of memory loss internally inconsistent and inconsistent with the medical evidence, and proceeded to evaluate Plaintiff's credibility.   In questioning Plaintiff's credibility, the ALJ properly exercised his discretion to determine that the intensity, persistence, and limiting effects of Plaintiff's symptoms were not as severe as Plaintiff alleged.  The ALJ pointed to Plaintiff's "poor work record" before the assault and his ten-year incarceration for aggravated assault.  (*Id.* 17).  He noted that Plaintiff alleged that he could not remember information from more than two months ago; however, Plaintiff was able to recall details of events from more than two months prior.  (*Id.*).  He also noted that Dr. Williams questioned Plaintiff's credibility in the mental RFC assessment.   In weighing Plaintiff's symptoms against the objective evidence, he relied on a CT scan and MRI taken just after the assault showing no intracranial abnormality.  He also relied on the mental health evaluations in the record.  In the Williams assessment, he noted its conclusion that Plaintiff was "capable of understanding instructions and sustaining pace and persistence in simple, routine work."  He also recognized Dr. Tan's finding that Plaintiff had moderate limitations in concentration and persistence but was never referred for or sought psychiatric treatment.  (Tr. 18–19).  He pointed to Dr. Candela's diagnosis of memory impairment, but explained that he assigned less weight to Dr. Candela's diagnosis because, as Dr. Tan noted, Dr. Candela failed to administer any memory loss tests to confirm the extent of Plaintiff's memory impairment.  Furthermore, the ALJ stated

that even if he fully credited Plaintiff's testimony regarding his memory loss, he would still find that Plaintiff could perform simple, routine work based on all the evidence.

Plaintiff asserts that the ALJ ignored portions of the CT scan and MRI that were not favorable to his credibility analysis.  In particular, Plaintiff points out that the CT scan states in the descriptive section, in part, that Plaintiff had a nasal fracture, mild medial deviation, and soft tissue swelling.   (Tr. 316).   However, the "Impression" section, which comes after the descriptive section, concludes that "THERE IS NO INTRACRANIAL ABNORMALITY."  The ALJ relied on the reading radiologist's conclusion that Plaintiff had no abnormalities in his CT scan.  This is not an instance where the ALJ "cherry picked" information from a report to support his conclusion.  Rather, the ALJ properly relied on a medical expert's analysis.  The follow-up CT scan also "showed no intracranial abnormality" and did not mention the fracture, deviation, or soft tissue swelling.  (*Id.* 319).  The ALJ similarly relied on the "Impression" section in the MRI report, which stated that Plaintiff had "NO ACUTE INTRACRANIAL PATHOLOGY." (See Tr. 334).

For the reasons stated above, the Court finds that the ALJ made a proper credibility assessment supported by substantial evidence.

### 2. The ALJ Was Required to Explain Why He Failed to Consider or Rejected the Silver Assessment

Second, Plaintiff argues that the record does not support the ALJ's finding that Plaintiff had the physical capacity to work at all exertional levels.  Plaintiff cites to the Silver assessment, which states that Plaintiff was limited to occasionally lifting or carrying twenty pounds and frequently lifting or carrying ten pounds, standing or walking at least two hours in an eight-hour workday, and sitting six hours.  (Tr. 246, 250).  It further found that Plaintiff had an unlimited ability to push or pull but was not permitted to use a ladder/rope/scaffolds or crouch, and could

only occasionally use stairs, balance, stoop, kneel, and crawl.  (*Id.* 246–47).  Plaintiff had to avoid concentrated exposure to vibration and hazards such as machinery and heights.  (*Id.* 249).

"The ALJ must consider all relevant evidence when determining an individual's [RFC] in step four."  *Johnson*, 529 F.3d at 201 (quoting *Fargnoli*, 247 F.3d at 41); 20 C.F.R. § 416.945(a).  "[T]he ALJ cannot reject evidence for no reason or for the wrong reason."  *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (citation omitted).

In making his determination as to the Plaintiff's physical capacity, the ALJ considered x-ray records, MRI reports, and CT scans showing Plaintiff's head and leg injuries had healed.  (Tr. 17).  Based on this evidence, the ALJ concluded that, physically, the Plaintiff could perform a full range of work at all exertional levels.  (*Id.* 16–17).  The ALJ did not mention the Silver assessment, which states that Plaintiff has limited physical capabilities due to the ankle fracture he sustained in the assault.  To the extent the Silver assessment conflicts with the other medical evidence and with the ALJ's physical RFC determination, the ALJ was required to explain why he accepted the MRIs and CT scans and rejected the Silver assessment.  *Cruz,* 244 Fed. Appx. at 479 (citing *Hargenrader,* 575 F.2d at 437).

It is unclear to this Court whether the ALJ failed to assess the Silver assessment or whether he considered it and rejected it.  Remand is required so the ALJ may explain his consideration of the Silver assessment, his reasoning rejecting it, and his acceptance of the other medical records.

*3.   The Evidence in the Record Was Sufficient to Determine Whether Plaintiff Was Disabled*

Third, Plaintiff argues that the ALJ had a duty to fully develop the record by ordering memory loss tests.  He alleges that the ALJ acknowledged the insufficiency of the evidence

when he discounted Dr. Candela's diagnosis for failure to administer a memory loss test and was thus required to order a test.

The burden is on the claimant to prove he is disabled by providing medical evidence of his disability.   20 C.F.R. § 416.912(a).   However, if the Commissioner believes he lacks sufficient medical evidence to make a disability determination, the Commissioner must secure additional evidence.   *Id.* § 416.912(e)-(f); *Ferguson v. Schweiker*, 765 F.2d 31, 36 n.4 (3d Cir. 1985).

Contrary to Plaintiff's assertion, the ALJ did not find the evidence insufficient to support his determination that Plaintiff was not disabled.   Discounting Dr. Candela's diagnosis did not equate to a finding that the evidence was not adequate to determine disability.   Were Dr. Candela's diagnosis the only mental assessment on the record, Plaintiff's argument might stand. However, the ALJ gave controlling weight to the findings in the Williams assessment, which spoke directly to Plaintiff's ability to work given his mental limitations, and relied on CT scans and an MRI showing no intracranial abnormality or intracranial pathology.   (Tr. 316, 319, 334). The ALJ had sufficient, clear evidence on which to base his mental RFC assessment.   Therefore he did not have a duty to request additional information.

## C. The Hypothetical Posed to the Vocational Expert Fully Incorporated Plaintiff's Functional Limitations Caused by His Memory Impairment

Plaintiff argues that the hypothetical posed to the vocational expert during the hearing did not include all of Plaintiff's relevant mental limitations.   A hypothetical question posed to a vocational expert must "accurately portray the claimaint's impairments" and "the expert must be given an opportunity to evaluate those impairments as contained in the record."   *Rutherford*, 399

F.3d at 554 (quoting *Burns v. Barnhardt*, 312 F.3d 113, 123 (3d Cir. 2002) (internal quotation marks omitted). The Third Circuit has explained that the impairments the expert must evaluate are only those credibly established in the medical record and not all the impairments the claimant alleges to have. *Id.* Credibly established impairments are those supported by medical evidence and not otherwise controverted in the record. *Id.* Failure to include these impairments in the hypothetical precludes the ALJ from relying on the expert's response.

Plaintiff asserts the ALJ failed to include a number of Plaintiff's relevant mental limitations noted in the Williams assessment in the hypothetical. The limitations Plaintiff refers to all appear in Section I of the Williams assessment. The Social Security Administration's operating guidelines — Program Operations Manual System ("POMS") — states that Section I of the mental RFC form is a worksheet to aid the medical consultant and is not the RFC assessment itself. POMS DI 24510.060, *available at* http://policy.ssa.gov/poms.nsf/lnx/0424510060. The ALJ need not give weight to Section I as it is not the actual assessment, and therefore did not err when he failed to include these factors in the hypothetical. *See Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636–37 (3d Cir. 2010).

Section III of the mental RFC form provides the actual assessment. In that Section, Dr. Williams did not mention the specific limitations Plaintiff states the ALJ failed to include in the hypothetical, nor do they appear elsewhere in the record. Therefore, the ALJ was not required to include those limitations in his hypothetical to the vocational expert.

Additionally, Plaintiff alleges that the ALJ failed to explain why he disregarded the vocational expert's testimony regarding Plaintiff's GAF score, which Dr. Candela asigned.

At the hearing Plaintiff's attorney asked Mr. Meola whether a person as described in the ALJ's hypothetical with a GAF score of 35–40 could perform any work activity. (Tr. 42). The

vocational expert answered that the person would require restructuring in a vocational rehabilitation program.  (*Id.*).

A GAF score does not have a direct correlation to the severity requirements in the Commissioner's mental disorder listings, 65 Fed. Reg. 50764–5.  "Further, where a treating source has failed to provide specific limitations findings to explain a given GAF score, or to tie the GAF score into some explanation of claimant's ability to work, a court cannot be expected to provide a specific assessment of the GAF score."  *Curran v. Astrue*, Civ. No. 10-142, 2011 WL 2516402, at *16 (W.D. Pa. June 23, 2011) (citing *Gilroy v. Astrue*, 351 Fed. App'x 714, 716 (3d Cir. 2009)).

As noted in Section III.B.1 above, the ALJ gave Dr. Candela's report "some weight only to the extent that the claimant has an observable memory impairment." (Tr. 19).  In addition, Dr. Candela did not explain how he reached the GAF score in his report.  As the ALJ gave limited weight to Dr. Candela's diagnosis, he did not have to give any more weight to Meola's testimony based on that diagnosis.  *See Craigie v. Bowen*, 835 F.2d 56, 57–58 (3d Cir. 1987).  Nor was he expected to give a specific assessment of the GAF score based on Dr. Candela's unexplained conclusion.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed in part and remanded in part for further proceedings in accordance with this opinion.  An appropriate Order accompanies this Opinion.


Date:   November 30, 2011                    s/Claire C. Cecchi
                                        **HON. CLAIRE C. CECCHI**
                                        **United States District Judge**